UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA L. RAMOS,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 2:14-cv-8829 (GJS)<br><br>**MEMORANDUM OPINION AND ORDER** |

**INTRODUCTION**

Plaintiff Sara L. Ramos filed a complaint seeking review of the Commissioner's denial of her application for disability insurance benefits and supplemental security income. In the Joint Stipulation, Ramos raises two claims of error: (1) that the Administrative Law Judge ("ALJ") erred by determining that Ramos did not qualify for benefits at Step Three—specifically under Listed Impairment 12.05C,[1] and (2)

---

[1] To decide if a claimant is entitled to benefits, an ALJ ordinarily conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows: (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two; (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five; (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

that at Step 5, the ALJ erred by finding that someone with Ramos's residual functional capacity ("RFC"), as limited by Dr. Borden's testimony that Ramos could perform only one- and two- step jobs, could perform the positions of Marker II and Production Assembler.

For the reasons that follow, the Court remands for further administrative proceedings.

## PROCEDURAL HISTORY

On January 14, 2010, Ramos filed applications alleging disability as of August 21, 2009. [Admin. Rec. ("AR") 303-09.] Her claims were initially denied on May 21, 2010. [AR 191-95.] A hearing was conducted on August 18, 2010, after which the ALJ denied Ms. Ramos's application. [AR 144, 172-185.] The Appeals Council reversed and remanded for further proceedings on January 17, 2012. [AR 186-89.] A different ALJ was appointed, and hearings were held on August 8, 2012 and April 24, 2013. [AR 46-109, 110-144.] On May 30, 2012, the ALJ found Ramos not to be disabled. [AR 17-39.]

Ramos sought review in the Appeals Council, who denied her request on September 29, 2014. [AR 1-6.] This case followed.

## GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

Even if Ramos shows that the ALJ committed legal error, "[r]eversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009)). And "[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2011).

That said, the burden of showing harm is still low. "Where the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether reconsideration is necessary. By contrast, where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate." *Id.* at 888. Courts have "affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006). In sum, "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' and … 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (quoting *Stout*, 454 F.3d at 1055-56).

To determine whether an error was harmless, this Court may consider "the likelihood that the result would have been different" and "the impact of the error on the public perception of such proceedings." *Ludwig,* 681 F .3d at 1054. It may not, however, "appl[y] harmless error in a way that affirm[s] the agency on a ground not invoked by the ALJ." *Marsh*, 792 F.3d at 1172. Ultimately, "[t]he nature of [the] application [of the harmless error doctrine] is fact-intensive—'no presumptions

operate' and '[the Court] must analyze harmlessness in light of the circumstances of the case.'" *Id.* (quoting *Molina,* 674 F.3d at 1121).

## DISCUSSION

**I. The ALJ's Conclusion that Ms. Ramos Did Not Qualify For Listed Impairment 12.05C is Supported by Substantial Evidence.**

Here, Ramos asks this Court to find that the record indisputably supports a finding that she fell within Listing 12.05C. If Ramos is correct, the five-step inquiry stops, and she "is presumed unable to work and is awarded benefits without a determination whether [s]he actually can perform [her] own prior work or other work." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)) (internal quotation marks omitted)).

"Listing 12.05C has three main components: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation." *Id.* "A claimant must 'present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Kennedy*, 738 F.3d at 1174 (quoting *Sullivan*, 493 U.S. at 531).

The issues before the Court here are quite narrow. The Commissioner does not contest that the third prong is satisfied.[2] The Commissioner also does not contend

---

[2] The record independently supports a finding of a significant work-related limitation "when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). The Ninth Circuit also adopted another circuit's conclusion that a "finding of severity **automatically satisfied** the more than slight or minimal effect standard." *Id.* at 633 n.3 (emphasis added) (citing *Nieves v. Sec'y of Health & Human Servs.*, 775 F.2d 12, 14 (1st Cir. 1985)). *But cf. McGill v. Callahan*, 127 F.3d 1105 (9th Cir. 1997) (assuming *arguendo* "that a severe impairment at step two of the sequential disability analysis necessarily satisfies Listing 12.05C"). Thus, the ALJ's finding of, among other severe impairments, obesity, was significant to satisfy this

4

that, if valid, Ramos's IQ scores fall between 60 and 70. Thus, the core of the parties' dispute is (1) whether the ALJ properly rejected the IQ score results as invalid, and (2) whether Ramos's mental impairment manifested before age 22.

When considering whether Listing 12.05C applied, the ALJ found that it was appropriate to "discount the claimant's test results" because her "performance on objective testing did not represent the claimant's full capacity, based on the observations of both of the consultative examiners." [AR 26.] Specifically, the ALJ summarized Ramos's IQ tests as follows:

> Although not clearly malingering, the claimant has been described as exhibiting poor effort on examination. In particular, Dr. Colonna observed that the claimant provided fair to poor effort on testing, and that she tended to give up easily during the course of testing (Exhibit 8F, pp. 3, 5). Similarly, Dr. Sherrill noted that the claimant presented with questionable and sub-optimal effort during her examination, and she did not appear to be cooperating with the testing (Exhibit 14F, pp. 1, 5).

[AR 32.]

The Ninth Circuit has given little guidance about when it is appropriate to find an IQ score to be invalid, although it has expressed in an unpublished opinion that "[t]he regulations' inclusion of the word 'valid' in Listing 12.05C makes the ALJ's authority clear" to "decide that an IQ score is invalid." *Thresher v. Astrue*, 283 Fed. App'x 473, 475 (9th Cir. 2008); *see also id.* n.6 ("We have never decided what information is appropriately looked to in deciding validity."). And somewhat more recently, the Ninth Circuit expressly affirmed an ALJ's conclusion that IQ test results were invalid where the doctors "reported poor motivation in IQ testing,

---

prong so long as it caused different work-related limitations than those caused by inhibited mental development.

5

which decreased the reliability of the IQ tests." *Gray v. Comm'r of Soc. Sec. Admin.*, 365 Fed. App'x 60, 62 (9th Cir. 2010).

The Court concludes that the ALJ's finding discounting the IQ scores as invalid is supported by substantial evidence. The first psychological evaluation was conducted by clinical psychologist Dr. Rosa Colonna on April 23, 2011. [AR 492-99.] Although the result was a full scale IQ determination of 67, Colonna explained that "[t]he test results appear to be an underestimation of the claimant's ability at this time due to inconsistent effort." [AR 498.] Dr. Colonna further explained that Ramos's "overall cognitive ability falls within the borderline range although scores fall in the mentally deficient range." [*Id.*] In other words, Dr. Colonna herself provided the basis for concluding that the IQ score was not valid or representative, and that some upward adjustment would be appropriate. The ALJ was entitled to rely on Dr. Colonna's determination. [*See* AR 32.]

So too with Dr. Lou Ellen Scherrill's evaluation. [AR 598-606.] Performed on May 1, 2012, this psychological evaluation resulted in a full scale IQ score of 57. [AR 603.] Like Colonna, Scherrill explained that she viewed the score as "an underestimation of this claimant's abilities" because "[i]t appeared that this claimant was not putting forth her best effort." [*Id.*] Scherrill also noted that Ramos's "scores are inconsistent with her receptive and expressive language skills," and that "[i]t is estimated that she at least functions in the Borderline Range of intellectual development and has adequate memory capabilities." [AR 604.] The ALJ was equally entitled to rely on Scherrill's own conclusions about the validity of the IQ score she derived. [*See* AR 32.] Even if the Court had doubts about these conclusions (which it does not), "[w]here 'the evidence can reasonably support either affirming or reversing a decision, [the Court] may not substitute [its]

6

judgment for that of the [ALJ].'" *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citations omitted).[3]

Ramos presents essentially three arguments to undermine the substantial evidence supporting the ALJ's determination. First, Ramos attempts to decry Sherrill's report as biased, but the argument is a red herring. Even if Ramos's contention were accepted, the ALJ and the Court still have no valid IQ score between 60 and 70 on which to find prong two satisfied, and would be left with Dr. Colonna's report, which like Dr. Sherrill's, finds that Ramos's IQ score was underestimated.

Second, Ramos argues essentially that she is not smart enough to fake her own mental deficiency. At best, this is an argument on how the ALJ might choose to weigh the evidence. The Court will not transform the substantial evidence standard into a fresh evaluation of the record.

Finally, Ramos argues that the sum of the evidence shows that Ramos performs below the borderline level to which Drs. Colonna and Sherrill estimated her capacity. This argument is irrelevant because Ramos still would not be entitled to the benefit of a finding of impairment under Listing 12.05C. Under *Zebley* and *Kennedy*, claimants must demonstrate that they "equal each criterion of Listing 12.05C rather than rely[] on overall functional impact." *Kennedy*, 738 F.3d at 1176; *see also id.* at 1177 (discussing *Brouse v. Chater*, 161 F.3d 11, 1998 WL 567964, at *2 (9th Cir. 1998) ("In another case quite similar to the situation here, we considered the medical equivalency doctrine so well established that we affirmed the ALJ's finding of nonequivalency in a non-precedential disposition, holding that

---

[3] Dr. Betty Borden testified about the reports. [AR 123-30.] The ALJ was permitted to rely on her opinion as *contributing* substantial evidence, but it could not stand alone. Nonetheless, the Court finds her evaluation of the IQ scores to be reasonable.

7

a claimant with an IQ over 70 did not show that she equaled Listing 12.05C.")). In short, even accepting Ramos's argument here does not create a valid IQ score under 70.[4]

## II. Remand is Appropriate to Resolve an Ambiguity in the Record About the ALJ's Rejection of the "One- to Two- Step Instruction" Limitation in Ramos's RFC.

After consideration of the medical evidence, the ALJ devised the following RFC for Ramos:

> lift and carry 20 pounds occasionally and 10 pounds frequently, and stand and walk for four hours in an eight-hour workday. She can occasionally perform postural activities. She can occasionally climb stairs and ramps. She can occasionally perform overhead activities. The claimant can also occasionally push and pull with her left lower extremity. The claimant must not have concentrated exposure to dust, fumes, or gases. The claimant must not have exposure to extreme temperatures. The claimant cannot climb ladders, ropes, or scaffolds. The claimant must not be exposed to heights or hazards. In addition, ***the claimant can perform simple work,*** with occasional contact with the public and with peers.

[AR 26 (emphasis added).] Although Ramos couches her claim of error as a problem with the vocational expert's job identification, her real complaint is that the ALJ's RFC limitation of "perform[ing] simple work" should have been further refined to "performing one- or two- step jobs" based on Dr. Borden's testimony. The Court finds that remand is appropriate for the ALJ to clarify his decision on this point.

---

[4] Because the ALJ's opinion properly rejected Ramos's IQ scores, rendering Listing 12.05C inapplicable, the Court does not analyze the first prong.

8

**A. The ALJ's Opinion and Hearing Testimony**

    **1. The Hearing Testimony**

At the August 8, 2012 hearing, Dr. Borden testified that she believed that Ramos "would be limited to simple repetitive tasks" "based on [Ramos's] borderline intellectual functioning" and "limited to occasional contact with others … [and] the public" based on "mood disorder." [AR 125.] Borden clarified that she meant "simple tasks" to mean one- to two- step instructions and tasks. [AR 140.]

Thereafter, vocational expert Jane Haile testified that Ramos could perform the positions of "Marker II" and "Production Assembler," which she identified as reasoning level 2 jobs. [AR 141, 142; *see* AR 132.] Haile distinguished Reasoning Level 1 as "apply[ing] common sense, understanding, carry[ing] out simple one or two step instructions" from Level 2 where one "appl[ies] common sense, understanding, to carry out detailed but involved written or oral instruction." [AR 141, 142.] The vocational expert testified that there were not "reasoning level 1 jobs that would satisfy the first hypothetical," *i.e.*, the hypothetical matching the ultimate RFC determination. [AR 142; *see* AR 131.] Before accounting for the "up to 25 percent" erosion based on Ramos's RFC, the vocational expert found that there were approximately 33,000 Marker II jobs and 24,000 Production Assembler jobs available nationally and locally, 1,000 and 800, respectively. [AR 132.]

    **2. The ALJ's Opinion**

The mental RFC—the part at issue here—was based on (1) the testimony of Dr. Borden (a consultative examiner), whom the ALJ afforded greater weight under 20 C.F.R. §§ 416.927(d)(3)&(6), (2) the opinion of consultative examining psychologist Dr. Colonna, whom the ALJ afforded great weight, (3) the opinion of consultative examining psychologist Dr. Sherrill, whom the ALJ afforded great weight, (4) Ramos's treatment records, and (5) the opinion of a treating physician whom the ALJ gave little weight. [AR 30.] Of note, the Court believed all three

9

doctors' opinions to be consistent with one another, and Ramos does not challenge the weighing of each of these sources.

With the RFC mentioned above, *supra* at 8, the ALJ concluded that Ramos could perform the positions of Marker II and Production Assembler, which are Reasoning Level 2 jobs. [AR 33-34.] The ALJ also accepted "an erosion of up to 25 percent" based on the RFC, but still concluded that other work "existed in significant numbers in the national economy." [AR 34.]

**B. Discussion**

The issue before the Court is again narrow: was the ALJ required to equate "simple work" with GED Reasoning Level 1? The short answer is "no," but in deciding not to do so, the ALJ must explain why. Accordingly, remand is appropriate.

At the outset, the Commissioner is correct that it is the ALJ's responsibility and duty to translate the medical and nonmedical evidence into an RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). In performing that task, however, when faced with limitations offered without contradiction, an ALJ must "include[] these limitations in his RFC []or explain[] why he rejected them." *Van Sickle v. Astrue*, 385 Fed. App'x 739, 741 (9th Cir. 2010) (citing *Widmark v. Barnhart,* 454 F.3d 1063, 1066 (9th Cir. 2006)). Here, the ALJ neither included nor expressly rejected a "one- to two- step instruction" limitation. On its face, the ALJ's opinion would appear to support including such a limitation, given that he found Dr. Borden's opinion to carry more weight than any other medical expert opining on Ramos's mental condition. Yet the remainder of the analysis—including the evaluation of the vocational expert's testimony—suggests he rejected the GED Reasoning Level 1 limitation. The Court is not sure why, and for that reason, finds the case suitable for further consideration. The Court has considered whether the award of benefits would be appropriate here. Although a close call, the Court concludes that remand is appropriate for limited further administrative proceedings.

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101, 1105 (9th Cir. 2014) ("Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time." (internal quotation marks, citations, brackets, and ellipsis omitted)).

Nonetheless, the remand is a narrow one.[5] If the ALJ finds that Ramos is limited to jobs requiring "one- or two- step instructions,"[6] he must also find that Ramos's RFC limited her to GED Reasoning Level 1 jobs under *Rounds v. Comm'r, Soc. Sec. Admin.*, 795 F.3d 1177, 1182-83 (9th Cir. Aug. 4, 2015). Given that the vocational expert already testified that no jobs exist for someone with Ramos's modified GED Reasoning Level 1 RFC, the ALJ must then award benefits.

Alternatively, the ALJ may decide to reject Dr. Borden's conclusion that Ramos is limited to jobs requiring "one- or two- step instructions, if the ALJ gives a valid reason to do so. In that case, the "simple work" limitation may be permissibly read to encompass GED Reasoning Level 2 jobs, such as those the vocational expert identified, and denial of benefits is appropriate.

//
//

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Judgment be entered REVERSING the Commissioner's decision and REMANDING this matter for

---

[5] Notwithstanding the outcome, the Court finds this ALJ's opinion to have been particularly thorough and well reasoned.

[6] Alternatively, the ALJ could permissibly conclude that the "simple work" limitation in the current RFC means "one- to two- step instructions," which is functionally equivalent.

11

further administrative proceedings consistent with this Memorandum Opinion and Order.

DATED: November 17, 2015

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE